THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BNSF RAILWAY COMPANY, a Delaware Corporation,

        Plaintiff,

        v.

STEVEN MCARTHUR, THEODORE MAYER, JAY TURNQUIST, TONIA RUPRECHT, DAVID BECKNER, and LINDSAY DUNN,

        Defendants.

No. 2:15-cv-992 RAJ

ORDER

I. **INTRODUCTION**[1]

This matter comes before the Court on Defendants' motions to dismiss and related motion for joinder (Dkt. ## 47, 49, 54, 61), motion for protective order and related motions for joinder (Dkt. ## 75, 77, 77), motion for sanctions (Dkt. # 90), motion to

---

[1] The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the Parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

ORDER - 1

amend an answer (Dkt. # 98), and motion to withdraw as attorney (Dkt. # 104). Plaintiff BNSF Railway Company ("BNSF") opposes nine of these motions and has not yet responded to the motion to withdraw. For the reasons that follow, the Court **GRANTS** Defendants' motions to dismiss and related motion for joinder and the Court **DENIES** Defendant McArthur's motion for sanctions. The remaining motions are terminated as **MOOT**.

## I.  BACKGROUND

The Court summarized BNSF's claims in its prior Order on Defendants' motions to dismiss for failure to state a claim. Dkt. # 40 at pp. 2-3.

BNSF terminated Defendants after an investigation into their alleged "dishonesty as evidenced by [their] attempt to defraud BNSF by claiming monies not due . . ." and "intentionally falsif[ying] time slip records to claim miles . . . not actually traversed . . . ." Dkt. # 48-4. Defendants internally appealed their terminations, arguing that they calculated their miles based on their understanding of the collective bargaining agreements (CBAs). *See, e.g.*, Dkt. # 48-1 at pp. 4-6. Defendants cite to various CBAs and related documents, including the primary CBA dating back to August 1, 1944 with updated supplements, side-letters, regulations, rules, notices, policies, and practices. Dkt. ## 47 at p. 3, 49 at pp. 9-11, 54 at p. 2. These CBAs and related documents are all in effect and must be reconciled to determine whether Defendants properly calculated and recorded their mileage. Arbitration proceedings regarding Defendants' terminations are ongoing. Dkt. ## 47 at p. 9, 49 at p. 5, 54 at p. 3.

At the core of the current arbitration proceedings is the question of whether Defendants accurately recorded their miles pursuant to the relevant CBAs. Therefore, it appears that Defendants' arbitration proceedings and BNSF's instant lawsuit constitute two sides of the same coin. With this in mind, Defendants move to dismiss this lawsuit based on the Railway Labor Act's preemptive powers, which Defendants claim govern this suit.

ORDER - 2

## II. LEGAL STANDARD

Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing subject-matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id*. Once it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A party may bring a factual challenge to subject-matter jurisdiction, and in such cases the court may consider materials beyond the complaint. *PW Arms, Inc. v. United States*, 186 F. Supp. 3d 1137, 1142 (W.D. Wash. 2016) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

## III. DISCUSSION

**A. Railway Labor Act (RLA) Preemption**

One of Congress's stated purposes in enacting the RLA was "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C.A. § 151a(5). "To realize this goal, the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes": major disputes and minor disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). Major disputes are those concerning "the formation of collective bargaining agreements or efforts to secure new rights and incorporate them into future

ORDER - 3

agreements." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Alaska Airlines, Inc.*, 639 F.Supp. 100, 102 (W.D. Wash. 1986). Minor disputes "'gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve 'controversies over the meaning of an existing collective bargaining agreement [CBA] in a particular fact situation.'" *Hawaiian Airlines*, 512 U.S. at 252-53 (internal citations omitted). A minor dispute "can be 'conclusively resolved' by reference to an existing CBA." *Id.* at 263. Article III courts have jurisdiction over major disputes, but minor disputes are within the exclusive jurisdiction of an arbitrator. *Int'l Ass'n of Machinists*, 639 F.Supp. at 102.

State-law causes of action are not preempted to the extent that they are independent of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). This includes state-law claims that raise purely factual inquiries that do "not turn on the meaning of any provision of a [CBA]." *Id.* However, state-law claims that are "inextricably intertwined" with a CBA are preempted by the RLA. *Alaska Airlines, Inc. v. Schurke*, No. 13-35574, 2017 WL 360557, at *5 (9th Cir. Jan. 25, 2017) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). By way of example, the Ninth Circuit found that an employee's claims for intentional and negligent infliction of emotional distress were preempted because whether the employer was outrageous—an element at the heart of the claims—required the court to interpret the terms of the CBA. *Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999).

Acknowledging that the line between "inextricably intertwined" and "independent" state claims is hazy, the Ninth Circuit recently developed a three-part "decision tree" to use in such RLA cases:

> [The] court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without

ORDER - 4

considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

*Schurke*, 2017 WL 360557 at *7. "In the cases in which [the court] identified an independent state claim that was not preempted, most frequently the dispute was the extent to which the collective bargaining agreement had to be considered to decide whether the state claim was so independent as not to be preempted." *Id*.

### B. BNSF's Remaining Claims Are Preempted

BNSF has four remaining state-law claims: conversion, negligent misrepresentation, civil conspiracy, and unjust enrichment and restitution. Dkt. # 13 (First Amended Complaint) at ¶¶ 41-48. At the heart of all four claims is whether Defendants falsely reported the mileage they traveled. *Id*. at ¶¶ 42, 44, 46, 48. BNSF avers that this requires a simple inquiry into whether or not Defendants traveled the mileage they claimed. Dkt. # 64 at p. 1. BNSF further argues that, at worst, the Court will need to "look to" the relevant CBAs to review the proper way to calculate miles but will not need to interpret the CBAs. *Id*. at p. 2. However, BNSF does not point to concrete provisions in the CBA that would allow the Court to conclude—without interpreting—whether Defendants correctly calculated and reported their traveled miles. Indeed, Defendants direct the Court to several different agreements, regulations, and notices that must be reconciled to understand how an employee is to calculate miles, how that translates to wages, and how the employee and employer are to resolve disputes over the same. *See, e.g.*, Dkt. ## 47 at pp. 3-4; 49 at pp. 3-5, 9-11; 54 at pp. 9-10; 95 at p. 3.

This is a minor dispute and therefore the RLA demands that BNSF bring it to binding arbitration rather than to this Court. The CBAs here "contain[] provisions that

ORDER - 5

govern the actions giving rise to" BNSF's state claims, and the Court cannot resolve those claims without interpreting the relevant CBA provisions. *Schurke*, 2017 WL 360557 at \*7; *see also Saridakis*, 166 F.3d at 1276 (finding that "minor disputes . . . may be conclusively resolved by interpreting the existing CBA."). Specifically, the Court must interpret the existing provisions of the CBAs that govern how Defendants were to calculate and report mileage, and how any such disputes must be resolved. If Defendants calculated and reported their mileage correctly under the CBA, then BNSF's claims are without merit. These are dispositive issues within the purview of the arbitrator. In fact, these are the very issues that are currently before the arbitrator.[2]

### C. Staying This Matter Is Not Proper

BNSF asks this Court, in the alternative, to stay the lawsuit pending the outcome of the current arbitration proceedings. *See, e.g.*, Dkt. # 64, at p. 12. Considering the Court's determination regarding preemption, this course of action is not proper. The Court will not stay a matter over which it cannot exercise jurisdiction.

To be sure, BNSF relies on *Tice v. American Airlines, Inc.*, 288 F.3d 313 (7th Cir. 2002), and *Int'l Bhd. Of Elec. Workers, Local Union No. 1245 v. Pub. Serv. Comm'n of Nevada*, 614 F.2d 206 (9th Cir. 1980). *Tice* is not controlling in this circuit, nor is it persuasive. There, the Seventh Circuit found that central elements of the pilots' federal discrimination claims were solely in the purview of the arbitrator pursuant to the RLA. *Tice*, 288 F.3d at 316-18. However, the court opted to stay the matter rather than dismiss based on the "analogy . . . to the doctrine of primary jurisdiction." *Id*. at 317. That is, "in a suit based on a federal statute, [if] a potentially dispositive issue arises that is within the exclusive jurisdiction of an administrative agency, [then] the suit must be stayed while

---

[2] From a practical standpoint, the Court notes that denying Defendants' motions to dismiss and allowing this case to move forward would present extraordinary difficulties. It is impossible to imagine how the parties would fully litigate this matter without multiple references to and explanations of the CBAs and related documents. A jury would be left to speculate and engage in interpretations of the CBAs and related documents to determine whether the Defendants erred in their mileage calculations.

ORDER - 6

the parties resort to the agency for that resolution." *Id*.  BNSF did not allege any federal claims in this matter, and therefore this doctrine is inapposite here.

BNSF's reliance on *Int'l Bhd. of Elec. Workers, Local Union No. 1245* is further from the mark.  There, the Ninth Circuit dealt with the abstention doctrine, not preemption under the RLA.  The cases—both factually and legally—are markedly dissimilar.

**IV.   CONCLUSION**

Based on all the foregoing, the Court **GRANTS** Defendants' motions to dismiss for lack of subjective-matter jurisdiction.  Dkt. ## 47, 49, 54.  The Court further **GRANTS** Defendant Turnquist's motion for joinder.  Dkt. # 61.

The Court **DENIES** BNSF's motion to strike imbedded within its responses.  However, the Court does not find that BNSF brought a frivolous or baseless lawsuit, and therefore **DENIES** Defendant McArthur's motion for sanctions.  Dkt. # 90.

All remaining motions are terminated as **MOOT**.  Dkt. ## 75, 77, 79, 98, 104.

The Court directs the Clerk to close this matter.

DATED this 9th day of February, 2017.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER - 7